IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| LAYNE HEAVY CIVIL, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | Civil Action No. 1:17-cv-205 |
| ) | **(Jury Trial Demanded)** |
| HARRISON & HARRISON, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

COMES NOW Plaintiff Layne Heavy Civil, Inc. and files this Complaint against Defendant Harrison & Harrison, Inc. and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Layne Heavy Civil, Inc. ("Layne") is a foreign corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 1800 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas. Layne is a citizen of Indiana and Texas. At all relevant times hereto, Layne was authorized and licensed to conduct business in the State of Georgia.

2. Defendant Harrison & Harrison, Inc. ("Harrison") is a domestic corporation organized and existing under the laws of the State of Georgia, with a principal place of business located at 102 Newton Bridge Industrial Way, Athens, Georgia. Harrison is a citizen of Georgia and may be served with process via its registered agent, James C. Harrison, at 102 Newton Bridge Industrial Way, Athens, Georgia 30607.

3. Harrison is subject to the jurisdiction of this Court because it is a Georgia resident.

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this dispute because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and arises between parties—Layne and Harrison—that are corporate citizens of different states.

5. Pursuant to 28 U.S.C. § 1391 and Local Rule 3.4, venue is proper in this Court because Harrison maintains its principal place of business in Athens, Clarke County, Georgia.

## FACTS COMMON TO ALL COUNTS

6. Layne incorporates the allegations contained in paragraphs 1 through 5 as if stated herein verbatim.

7. On or about July 25, 2014, Layne and Harrison entered into a Subcontract by which Harrison, as subcontractor, agreed to provide the necessary labor, equipment, and materials to perform horizontal directional drilling ("HDD") services for the project known as the South Northshore Drive Water and Gas Line Replacement for Knoxville Utilities Board ("Project") and for which Layne served as the general contractor. A true and correct copy of the executed Subcontract, including its Exhibit A, is attached hereto as **Exhibit 1**.

8. Pursuant to the Subcontract, Harrison was to be compensated in accordance with fixed-unit per linear foot (LF) prices that varied depending on the diameter of the pipe being bored (including service bores) and the material—whether dirt or rock—through which the bore was being made, with additional escalators for bores exceeding 500 LF.

9. At various points throughout the Project and prior to its completion of the Subcontract's scope of work, Harrison threatened to walk off the jobsite due at least in part to difficulties Harrison was having in completing certain rock bores.

10. In an effort to maintain Harrison's services on the Project, Layne agreed to pre-pay Harrison for the completion of one particular bore, known as the Fourth Creek Bore, which involved an approximately 582 LF directional bore in rock using a 12-inch HDPE pipe, which was provided to Harrison by Layne at its own cost.

11. With Layne's consent, Harrison issued invoice no. NSD2014-07 to Layne, which requested payment of $160,341.00 for the completion of the Fourth Creek Bore ("Fourth Creek Bore Invoice"). A true and correct copy of the Fourth Creek Bore Invoice is attached hereto as **Exhibit 2**.

12. By payment remitted on or about January 26, 2015, Layne paid the amounts owed on the Fourth Creek Bore Invoice, and Harrison subsequently commenced its work on the Fourth Creek Bore.

13. Despite receiving payment for the Fourth Creek Bore Invoice, Harrison failed to complete the Fourth Creek Bore before stopping work and abandoning in place the 12-inch HDPE pipe it had been using for the Fourth Creek Bore.

14. Subsequently, Harrison walked off the jobsite and refused to complete the Fourth Creek Bore or any of its other remaining scope of work.

15. As a result of Harrison's failure to complete the Subcontract's scope of work, including the Fourth Creek Bore (for which it accepted full payment), and Harrison's refusal to retrieve the approximately 400 LF of abandoned 12-inch HDPE pipe, Layne incurred damages in an amount not less than $755,511.88, which include, *inter alia*, (i) additional costs to hire a replacement HDD subcontractor to complete the Subcontract's scope of work, including the re-drilling of the Fourth Creek Bore; (ii) additional costs to remove and replace the abandoned 12-inch HDPE pipe; (iii) losses of the invoiced amounts pre-paid to Harrison to complete the Fourth

Creek Bore (less contractual retainage); (iv) liquidated damages assessed to Layne by the Project's owner as a result of delays to the Project; and (v) extended general conditions incurred by Layne during the period of inactivity between Harrison's abandonment of its scope of work and the commencement of work by a replacement HDD subcontractor.

16. By letter dated August 17, 2016, Layne demanded that Harrison remit payment to Layne arising from Layne's claims against Harrison ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit 3**.

17. Layne has performed all conditions precedent prior to its commencement of the present action.

## COUNT I
## BREACH OF CONTRACT AGAINST HARRISON

18. Layne incorporates the allegations contained in paragraphs 1 through 17 as if stated herein verbatim.

19. Harrison breached the Subcontract by its unexcused failure to complete its contractual scope of work, including the Fourth Creek Bore (for which it accepted full payment).

20. As a direct and proximate result of Harrison's breach of the Subcontract, Layne incurred damages in an amount not less than $755,511.88 or such other amount as Layne may prove at trial, plus interest, costs, and attorneys' fees.

## COUNT II
## CONTRACTUAL INDEMNITY AGAINST HARRISON

21. Layne incorporates the allegations contained in paragraphs 1 through 17 as if stated herein verbatim.

22. The Subcontract contains several provisions, including Articles 4.5 and 10.6, that require Harrison to indemnify Layne for all claims, costs, expenses, and damages (whether liquidated or actual) that Layne suffers and that are caused by Harrison.

23. As alleged in the foregoing paragraphs, Layne has incurred damages for which Harrison is contractually obligated to indemnify Layne.

24. Harrison has failed, and continues to fail, to indemnify Layne for the damages arising from, *inter alia*, Harrison's failure to complete the Subcontract's scope of work, including the Fourth Creek Bore (for which it accepted full payment), and Harrison's refusal to retrieve the approximately 400 LF of abandoned 12-inch HDPE pipe.

25. As a direct and proximate result of Harrison's breach of its contractual duty to indemnify Layne, Layne has incurred damages in an amount not less than $755,511.88 or such other amount as Layne may prove at trial, plus interest, costs, and attorneys' fees.

## COUNT III
## INTEREST, COSTS ATTORNEYS' FEES AGAINST HARRISON

26. Layne incorporates the allegations contained in paragraphs 1 through 17 as if stated herein verbatim.

27. Article 10.6 of the Subcontract states as follows:

> In any instance whereby Contractor is entitled, under the terms of this Subcontract, to be indemnified by Subcontractor or to recover, retain or charge Subcontractor for any costs, expenses or damages from Subcontractor, Contractor shall also be entitled to recover, retain or charge (i) interest on any sums due from Subcontractor at the rate of twelve percent (12%) per annum to accrue from the date of demand, notwithstanding any dispute or uncertainty concerning the means or standards by which the amount of monetary recovery is to be ascertained, plus (ii) reasonable attorney's fees incurred by Contractor for all investigation, negotiation, litigation, arbitration and other such services commonly performed by attorneys, plus (iii) all court costs, fees paid to experts, arbitration fees and like expenses.

5

28. The foregoing contractual provision obligates Harrison to remit payment to Layne for Layne's attorneys' fees, expert witness fees, and other costs incurred by Layne as a result of its investigation and prosecution of this matter in an amount to be determined at trial, as well as interest at a rate of 12% *per annum* on the principal amount owed to Layne from the date of the Demand Letter through adjudication.

WHEREFORE, Layne prays as follows:

(a) That the Court enter judgment in favor of Layne and against Harrison on Counts I, II, and III;

(b) That the Court award Layne actual damages in an amount not less than $755,511.88 or such other amount as Layne may prove at trial;

(c) That the Court award Layne its attorneys' fees, expert witness fees, and other costs incurred by Layne as a result of its investigation and prosecution of this matter in an amount to be determined at trial, as well as interest at a rate of 12% *per annum* on the principal amount owed to Layne from the date of the Demand Letter through adjudication, in accordance with Article 10.6 of the Subcontract;

(d) That the Court grant Layne's demand for a trial by jury on all issues so triable; and

(e) That the Court award Layne such other relief as the Court or the jury determines is just and proper.

Respectfully submitted this 7th day of November, 2017.

[*Signatures on following page*]

**WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC**

 */s/ Joseph J. Minock*
Scott A. Witzigreuter
Georgia Bar No. 772669
Joseph J. Minock
Georgia Bar No. 863687
*Counsel for Plaintiff Layne Heavy Civil, Inc.*

3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433
switzigreuter@wwhgd.com
jminock@wwhgd.com